United States District Court
Southern District of Texas
**ENTERED**
May 08, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| RICHARD O. GONZALES, JR., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00001 |
| | § | |
| CHIEF SINTON POLICE DEPARTMENT/ | § | |
| OFFICERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Richard O. Gonzales, Jr., a Texas prisoner appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  (Doc. No. 1.)  Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997(e)(c); 28 U.S.C. § 1915A.  For the reasons discussed below, the undersigned recommends that the district court RETAIN Plaintiff's claims of excessive force against Officers Rendy Rodriguez and Phillap Hernandez in their individual capacities.  The undersigned will order service of process on those claims.  The district court should DISMISS all of Plaintiff's other claims.[1]

**A. Jurisdiction.**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

---

[1]  The Clerk is DIRECTED to correct the spelling of "Cheif, Sinton Police Department …" to "Chief, Sinton Police Department …" in the style of this case.

### B.  Background.

#### 1.  The instant action.

Plaintiff states that he is a pretrial detainee at the San Patricio County Jail in Sinton, Texas.  Plaintiff filed this suit against the chief of the Sinton Police Department (Plaintiff does not provide that person's name), along with the San Patricio County Sheriff's Office and the Sheriff's Office medical staff.  (Doc. No. 1, pp. 1, 3.)

In his complaint, Plaintiff alleges that two Sinton police officers used excessive force when detaining Plaintiff in August 2023, aggravating a back condition that Plaintiff suffered.  (Doc. No. 1, pp. 3, 4.)  After Plaintiff's arrest, the intake officer at the San Patricio County Jail allegedly tied a plastic bag around Plaintiff's head while Plaintiff vomited, and "tighten[ed] it more around [his] head the more [Plaintiff] threw up."  (Doc. No. 1, p. 4.)  And since the time of Plaintiff's arrest, the San Patricio County Jail's medical staff has allegedly failed to provide Plaintiff with what he believes to be appropriate treatment: surgery for his back that his doctor has allegedly recommended.  (Doc. No. 10, p. 9.)

To better understand Plaintiff's claims, the Court ordered Plaintiff to answer a questionnaire, and Plaintiff subsequently provided his response.  (Doc. Nos. 7, 10.)  Plaintiff also provided the Court with his medical records, as well as grievances and medical requests that he has filed.  (Doc. Nos. 10-2, 10-3.)  The undersigned accepts the factual allegations in Plaintiff's complaint, response to the Court's questionnaire, medical records, and grievances as true for the purposes of this screening.  Plaintiff's questionnaire response, medical records, and grievances are deemed to be part of his complaint in this case.

### 2. *Plaintiff's allegations.*

Plaintiff states that he was arrested by Sinton police officers on August 1, 2023.  (Doc. No. 1, p. 4; Doc. No. 10, p. 3 ¶ 9(e).)  Officer Phillap[2] Hernandez arrested Plaintiff in front of Plaintiff's sister's house for "walking in the middle of the road."  (Doc. No. 10, p. 2 ¶¶ 9(b), 9(c).)  Plaintiff resisted the arrest, believing that Officer Hernandez had no probable cause to search him.  *Id.* at 3 ¶ 9(d).  Plaintiff states that Officer Hernandez had assaulted Plaintiff on a previous occasion in September 2022; Plaintiff alleges that he told Officer Hernandez that the latter should call in another officer, because Plaintiff "didn't want him near me."  *Id.*  Plaintiff states: "As far as physical I just kept moving so he wouldn't put his hands on me cause I was in fear."  *Id.*

Plaintiff claims that Officer Hernandez allegedly assaulted him by "shoving" his shoulder, knee, and body weight into Plaintiff's spine.  (Doc. No. 10, p. 4 ¶ 9(g).)  Plaintiff protested that Officer Hernandez was hurting him, but Officer Hernandez "kept on throwing his weight" and instructing Plaintiff to put his hands behind his back.  *Id.* at 4-5 ¶ 9(g).  Plaintiff states that he could not put his hands behind his back, because his arm was pinned underneath him and because all of Officer Hernandez's weight was on top of him.  *Id.* at 5 ¶ 9(g).  After Plaintiff was finally handcuffed and searched, he was told to get up (Plaintiff does not state who gave him this direction), but refused, stating that his back hurt.  *Id.*  A deputy sheriff on the scene allegedly asked what was wrong with Plaintiff's back.  *Id.*  Officer Hernandez allegedly replied: "old spine injury" before the two allegedly "yanked" Plaintiff to his feet.  *Id.*[3]  Plaintiff states

---

[2]  This is Plaintiff's spelling of Officer Hernandez's first name.

[3]  Plaintiff's submitted documentation reflects that he injured his back in a car accident a year prior to his arrest. (Doc. No. 10-2, p. 24.)  This may have been a suicide attempt.  *Id.* at 25.  Plaintiff stated that he was ejected from a car at 90 miles per hour.  *Id.* at 42.

that when he was guided to the squad car Officer Hernandez "ran around to the passenger back door, and yanked me in the car by the handcuffs." *Id.*

Plaintiff claims that Officer Rodriguez arrived at the scene of the arrest while Plaintiff was being searched. (Doc. No. 10, p. 3 ¶ 9(f).) Officer Hernandez allegedly found a bullet in Plaintiff's pocket, and told Officer Rodriguez to cuff Plaintiff. *Id.* Plaintiff states that Officer Rodriguez grabbed his hand and cuffed it. *Id.* Plaintiff states what happened next: "As she was asking for my other hand I was still at it with Phillap Hernandez. Officer Rodriguez kept yelling put your hand behind your back, but my arm was under me, and I had Officer Hernandez with all his weight pressed on me." *Id.* Plaintiff claims that on the way to the squad car he paused because he was hurting. *Id.* Officer Rodriguez responded by grabbing Plaintiff's throat. *Id.* at 4 ¶ 9(f). Plaintiff remembered Officer Hernandez's alleged prior assault from September 2022 and became scared, and did not want to get into the squad car. *Id.* Plaintiff put his leg in the squad car's rear wheel well so that the arresting officers could not get him into the car. *Id.* Plaintiff heard his sister yelling to the officers about Plaintiff's back, but Officer Rodriguez yelled for Plaintiff's sister to stay back. *Id.* Plaintiff states: "It was there, and then that I felt Rendy Rodriguez['s] closed fist punch me in the back about three times. I still refused cause the way they were playing dirty made me begin to believe if I got in the car that they would have other intentions for me." *Id.* Plaintiff states that he was put into the back of the squad car without a seat belt, and that Officer Rodriguez "floored the gas pedal all the way to the county jail. At every stop sign she would slam on the brakes sending me flying off the seat I was laid across." *Id.*

Plaintiff claims that Officer Hernandez knew that Plaintiff had previously had back surgery. He states that Officer Hernandez had assaulted Plaintiff in September 2022, "and a

detective told him I had surgery, so during the arrest I just kept yelling my back." (Doc. No. 10, p. 6 ¶ 11.) Plaintiff claims that his sister and his child's mother both advised "them" (presumably Plaintiff means Officer Hernandez and Officer Rodriguez) of Plaintiff's prior surgery. *Id.*

Asked what injuries he suffered from the arrest, Plaintiff states that he suffered bruising, spinal pain, and a "burst fracture in T-12." (Doc. No. 10, p. 6 ¶ 12.)[4] Plaintiff also claims that he has "a intervertebral disc desication" and "moderate to severe height loss at T-11 to T-12." *Id.* Plaintiff also claims that "there is mild mass effect on the spinal cord at T-11 to T-12 due to kyphotic deformity, T-12 retropulsion, and disc bulge." *Id.*

Upon arrival and intake at the San Patricio County Jail, Plaintiff claims that he vomited onto himself and the floor because he was in pain. (Doc. No. 10, p. 7 ¶¶ 20(a), 20(b).) A correctional officer named Perez allegedly took a clear trash bag and put it over Plaintiff's head. *Id.* ¶ 20(e). Officer Perez allegedly tightened the bag as Plaintiff continued to vomit, "to get the throw up closer to my face, so I smell it, and in hope it would get on my face." *Id.* ¶ 20(f). The bag caught Plaintiff's vomit, but also made breathing difficult. *Id.* ¶ 20(g). Officer Perez held Plaintiff to keep him from falling out of the wheelchair in which the handcuffed Plaintiff was sitting. *Id.* ¶ 20(h). After Plaintiff finished vomiting, Officer Perez removed the bag. *Id.* ¶ 20(i). Plaintiff states that he received no injuries from Officer Perez; he "just had to refresh my lungs with air." *Id.* ¶ 21; *see also id.* at 8 ¶ 28.

Plaintiff states that he asked jail staffers at intake to call EMS, which they did. (Doc. No. 10, p. 6 ¶ 13.) Plaintiff was taken an emergency room in nearby Portland, where he was x-rayed,

---

[4] The undersigned construes "T-12" as referring to one of Plaintiff's vertebrae, the twelfth thoracic vertebra.

was evaluated, was told he "would be in pain," was prescribed medication, and was "sent home." *Id.* ¶ 14.

An MRI conducted on Plaintiff later allegedly resulted in a diagnosis of a fracture of the T-11 and T-12 vertebrae.  (Doc. No. 10, p. 8 ¶ 31(c).)  Plaintiff states that he is "sure the fracture happened during the assault."  *Id.* ¶ 31(e).  A spinal doctor named Mathew T. Alexander (Plaintiff states that Dr. Alexander is his own doctor) allegedly recommended in December 2023 that Plaintiff undergo an "open posterior thoracic T9 to T12 redo laminectomy" as well as fusion. *Id.* at 8-9 ¶¶ 32(a), 32(b), 32(c).  Plaintiff states that Dr. Alexander "let the jail know when they called to schedule the appointment that he was ready to operate."  *Id.* at 9 ¶ 32(e).  Plaintiff alleges that he wrote to the jail's medical department to ask if he was going to get the surgery, "and they just say my surgery is pending."  *Id.*  The jail allegedly "states they are waiting for the county to okay the surgery cause I'm on the [indigent] program."  *Id.* ¶ 32(f).

Plaintiff alleges that the San Patricio County jail medical staff made an "unauthorized diagnosis."  (Doc. No. 1, p. 3.)  Asked to explain what he meant by this, Plaintiff responded that Dr. Rene Acuna, the county's practitioner "made an incorrect diagnosis, along with county medical nurse Mary Ann."  (Doc. No. 10, p. 9 ¶ 33(a).)  Dr. Acuna allegedly reviewed (and misread) Plaintiff's MRI and told Plaintiff there was nothing wrong with his back, "but didn't let the specialist have the correct copies of the MRIs so that my Dr. could see the true damage in my spine."  *Id.* ¶ 33(c); *id.* at 10 ¶ 35.  Plaintiff believes that, but for Dr. Acuna's actions, he would have received the spinal surgery already.  *Id.* at 9 ¶ 33(e).  Plaintiff alleges that he "write[s] all the time" to Dr. Acuna and Nurse Mary Ann to advise them he is in pain, but that they seldom respond.  *Id.* at 10 ¶ 34(a).  He contends that he is still in pain, and that he experiences "grinding and popping" in his back.  *Id.* ¶ 34(c).  Plaintiff claims that he is "still in unbearable pain in my

spine lower, and mid area." *Id.* at 7 ¶ 19.  He adds: "I believe I am in need of the spinal surgery my doctor is strongly recommending." *Id.*

Plaintiff states that he did not file grievances against Officers Rodriguez or Hernandez because "the police department does not have a grievance office."  (Doc. No. 10, p. 10 ¶ 37.)  He likewise did not file any grievances against the medical staff, but "wrote and asked for a second opinion." *Id.* ¶ 38; *see also* Doc. No. 10-3 p. 67.  Plaintiff also states that he wrote to the judge in his state criminal case[5] and to the county sheriff, asking how to press charges against Officers Rodriguez and Hernandez, but that he received no response.  *Id.* at 11 ¶ 39; *see also* Doc. No. 10-3, pp. 65-66.

Plaintiff's submitted medical records include a detailed writeup from Plaintiff's visit with Dr. Alexander in December 2023.  The summary confirms that, among other things, Plaintiff had back surgery in May 2022 ("open posterior T12 to L4 laminectomy and fusion with instrumentation and L2 transpendicular decompression") and "strongly recommend[ed] surgery to avoid permanent neurological deficits."  (Doc. No. 10-2, pp. 1, 6.)

Plaintiff's submitted sick call submissions and inmate request forms reflect various requests for a back brace, a thicker mattress, and medical attention for his back, as well as consultation with a mental health professional.  *See generally* Doc. No. 10-2, pp. 22, 29, 32-33, 35, 40-48, 50, 52-55; Doc. No. 10-3, pp. 1-3, 8-10, 15-33, 41, 44-53, 55-64, 68-69.  These documents also generally reflect that jail officials were responsive to Plaintiff's needs and requests.[6]  One entry, dated September 29, 2023, states that Plaintiff had been referred to a

---

[5]  Plaintiff states that he is under pending state criminal charges for forgery, theft of a firearm, possession of a firearm by a felon, resisting arrest, and evading arrest or detention with a vehicle.  (Doc. No. 10, p. 1 ¶ 3(a); *see also* Doc. No. 10-2, p. 23) (booking report).)

[6]  Plaintiff's documents also reflect at least occasions on which he refused medical attention.  (Doc. No. 10-3, pp.

private physician, a specialist, for his back condition, and was to have an MRI before that appointment.  *Id.* at 48; *see also id.* at 51.  Plaintiff was being provided with naproxen and gabapentin, and that he needed an order from a specialist for a back brace.  *Id.*  The records also reflect Plaintiff's determination of eligibility for county indigent health care program benefits, although the sheriff's office notified Dr. Alexander that it would take responsibility for medical bills incurred by Plaintiff while he is in custody.  *Id.* at 49; Doc. No. 10-3, p. 14.

### 3.  Plaintiff's legal claims and requested relief.

Plaintiff sues Officers Rodriguez and Hernandez in their official and individual capacities, for the assault during his arrest.  (Doc. No. 1, p. 3; Doc. No. 10, p. 11 ¶ 41.)  He also sues the chief of the Sinton Police Department.  (Doc. No. 1, p. 3.)  Plaintiff additionally sues the San Patricio County Sheriff's Department, and also Officer Perez in his official and individual capacities, for the plastic bag incident.  (Doc. No. 1, p. 3; Doc. No. 10, p. 11 ¶ 42.)  Plaintiff sues the San Patricio County Medical Staff, and also Dr. Acuna and Nurse Mary Ann in their official and individual capacities.  (Doc. No. 1, p. 3; Doc. No. 10, p. 11 ¶ 43.)

Liberally construed, Plaintiff lodges the following specific claims in his § 1983 complaint:

- Officers Rodriguez and Hernandez subjected Plaintiff to excessive force in violation of his Fourteenth Amendment rights when they arrested him;

- Officer Perez and the San Patricio County Sheriff's Department subjected Plaintiff to excessive force in violation of his Fourteenth Amendment rights when Officer Perez put the plastic bag over Plaintiff's head and tightened it as he vomited;

---

12-13.)

- Dr. Acuna and Nurse Mary Ann diagnosed Plaintiff incorrectly, and they and the San Patricio County Medical Staff wrongly denied medical treatment to Plaintiff in the form of back surgery, in violation of Plaintiff's Fourteenth Amendment rights.[7]

Plaintiff requests monetary and injunctive relief. As monetary relief, Plaintiff seeks unspecified compensation for his medical expenses. (Doc. No. 10, p. 11.) He also requests that the Court "approve recommended spinal surgery from spinal doctor Mathew Alexander." *Id.* He further asks that criminal charges be brought against the "assaulting officer[s]." *Id.*

### C. Legal standards.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

---

[7] Plaintiff does not appear to lodge any specific claims against the Sinton chief of police.

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.* Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that the defendants are liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review. Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations, unwarranted factual inferences, or legal conclusions. *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

### D. Discussion.

#### 1. Plaintiff's excessive force claims against Officer Rodriguez and Officer Hernandez in their individual capacities should be retained. His excessive force claim against Officer Perez should be dismissed.

Liberally construed, Plaintiff alleges two distinct episodes of excessive force. First, he claims that Officers Rodriguez and Hernandez each used excessive force in arresting him. Second, he alleges that Officer Perez subjected him to excessive force by putting the plastic bag over Plaintiff's head and tightening it as he vomited. Plaintiff's claims against Officers Rodriguez and Hernandez should be retained, but his claim against Officer Perez should be dismissed.

##### a. Officers Rodriguez and Hernandez.

Plaintiff's claims against Officers Rodriguez and Hernandez arise from their alleged conduct during his arrest. The Fourth Amendment protects a person from being subjected to excessive force during an arrest. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). As a general guideline, "*all* claims that law enforcement officers have used excessive force … in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should

be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). To state a claim for excessive force during the course of an arrest, a plaintiff "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quotations and citation omitted).

"[T]he objective reasonableness of the amount of force turns on the facts and the circumstances for each incident." *Hudspeth v. City of Shreveport*, 270 F. App'x 332, 336 (5th Cir. 2008) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)). The Fourth Amendment inquiry is an objective one that is determined "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Hale v. City of Biloxi, Miss.*, 731 F. App'x 259, 262 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396-97); *see also Lombardo v. City of St. Louis, Mo.*, 594 U.S. 464, 466 (2021) (per curiam) (a reviewing court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them") (quoting *Graham*, 490 U.S. at 397). Courts should consider "the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"In evaluating excessive force claims, courts may look to the seriousness of the injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "Thus, 'the extent of the injury inflicted

may be considered in determining whether the officers have used excessive force.'" *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (internal quotations and citations omitted). Although a plaintiff need not demonstrate a "significant injury," injuries such as bruises, abrasions, or contusions are considered *de minimis* and are insufficient to demonstrate that excessive force was used. *See Westfall v. Luna*, 903 F.3d 534, 549-50 (5th Cir. 2018) (citations omitted); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (citing cases).

Plaintiff's factual allegations in this case, accepted as true, are sufficient to proceed past the screening stage. He claims that Officer Hernandez "continuously shov[ed]" his shoulder, knee, and body weight into Plaintiff's spine. (Doc. No. 10, p. 4 ¶ 9(f).) Plaintiff told Officer Hernandez that his back hurt. *Id.* While being walked to the squad car after being arrested, Plaintiff paused because he was in pain, and Officer Hernandez then "ran around to the passenger back door, and yanked me in the car by the handcuffs." *Id.*

Officer Hernandez allegedly told Officer Rodriguez to handcuff Plaintiff. She did so, and then walked Plaintiff to the squad car. (Doc. No. 10, p. 3 ¶ 9(f).) Plaintiff resisted getting into the car by putting his leg in the "rear wheel fender." *Id.* at 4 ¶ 9(f). Officer Rodriguez then punched Plaintiff in the back "about three times." *Id.* Plaintiff continued to refuse to get into the car "cause the way they were playing dirty made me begin to believe if I got in the car that they would have other intentions." *Id.* Plaintiff alleges that he was "yanked" into the squad car and that Officer Rodriguez thereafter deliberately drove recklessly and violently, allegedly causing Plaintiff to be sent "flying off the seat" he was laid across. *Id.*

Plaintiff alleges that he suffered an injury from this treatment, most notably a broken back. *See* Doc. No. 10, p. 6 ¶ 12 (a "burst fracture in T12," intervertebral disc desiccation, and moderate to severe height loss at T11 to T12 vertebrae, a mild mass effect on the spinal cord at

T11 to T12 due to kyphotic deformity, T12 retropulsion, and disc bulge, along with bruising and scrapes from road burn).  Plaintiff also alleges that his injury was caused by Officers Rodriguez and Hernandez when they were arresting him.  (Doc. No. 1, p. 4; Doc. No. 10, pp. 3-5 ¶¶ 9(f), 9(g).)  He additionally claims that Officer Hernandez was subjectively aware of Plaintiff's prior back surgery, through several means: a detective had told Officer Hernandez in September 2022 that Plaintiff had had back surgery (Doc. No. 10, p. 6 ¶ 11); Plaintiff's sister and the mother of Plaintiff's child allegedly told Officer Hernandez about Plaintiff's prior back surgery (*id.*); and Officer Hernandez, when asked by a sheriff's deputy what was wrong with Plaintiff's back, allegedly replied: "old spine injury" before the two allegedly "yanked" Plaintiff to his feet.  *Id.* at 5 ¶ 9(g).  Taking Plaintiff's factual allegations as true, Officer Rodriguez was also subjectively aware of Plaintiff's back condition because Plaintiff's sister yelled "his back" and Officer Rodriguez responded by yelling for Plaintiff's sister to get back.  *Id.* at 4 ¶ 9(f).

Plaintiff alleges that Officer Hernandez told him that he was arrested for walking in the middle of the road.  (Doc. No. 10, p. 6 ¶ 9(c).)  He acknowledges that he resisted Officer Hernandez because he believed Officer Hernandez lacked probable cause to arrest him.  *Id.* at 3 ¶ 9(d).  Plaintiff states that he "just kept moving so he [Officer Hernandez] wouldn't put his hands on me cause I was in fear."  *Id.*  This "fear" allegedly stemmed from a prior incident in which Officer Hernandez had assaulted Plaintiff.  *See id.*  While some measure of force may have been justified because of Plaintiff's active resistance, the seriousness of the injury that the officers allegedly caused is relevant to the question of whether the quantum of force they used was reasonable under the circumstances.  The undersigned concludes that Plaintiff has plausibly alleged that the amount of force used was excessive, based on the specific type of force used –

the officers allegedly directed punches, knees, and shoulders at Plaintiff's back, despite knowledge of his back condition – and the injury he suffered.

Plaintiff's allegations, accepted as true, are sufficient at this early stage in the case to state Fourth Amendment claims of excessive force against Officers Rodriguez and Hernandez. *See Peña*, 879 F.3d at 619. Accordingly, the district court should RETAIN Plaintiff's excessive force claims against those defendants in their individual capacities. The undersigned will order service of process on those claims.

### b. *Officer Perez.*

Plaintiff's claim against Officer Perez is different. He alleges that Officer Perez took a clear trash bag and put it over Plaintiff's head. (Doc. No. 1, p. 4; Doc. No. 10, p. 7 ¶ 20(e).) Officer Perez allegedly tightened the bag as Plaintiff continued to vomit. (Doc. No. 1, p. 4.) Asked why he believed Officer Perez tightened the bag, Plaintiff responded: "to get the throw up closer to my face, so I smell it, and in hope it would get on my face." (Doc. No. 10, p. 7 ¶ 20(f).) The bag caught Plaintiff's vomit, but also allegedly made breathing difficult. *Id.* ¶ 20(g). Officer Perez held Plaintiff to keep him from falling out of the wheelchair in which the handcuffed Plaintiff was sitting, but otherwise did not Plaintiff in any other way. *Id.* ¶ 20(h). After Plaintiff finished vomiting, Officer Perez removed the bag. *Id.* ¶ 20(i). Plaintiff states that he received no injuries from Officer Perez: Plaintiff "just had to refresh [his] lungs with air." *Id.* ¶ 21; *see also id.* at 8 ¶ 28.

The undersigned liberally construes Plaintiff's allegation as one of excessive force. This force was not used during Plaintiff's arrest, but rather during Plaintiff's subsequent intake at the jail, so the Fourth Amendment analysis used with regard to Officers Rodriguez and Hernandez is inappropriate. Rather, the undersigned evaluates Plaintiff's claim in the context of alleged

excessive force against a pretrial detainee. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (abrogating the application of Eighth Amendment excessive force standards articulated in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees).  To sufficiently state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.*  A pretrial detainee can prevail only if he or she shows that the defendant applied force in a manner that was not rationally related to a legitimate nonpunitive governmental purpose, or that the actions were excessive in relation to that purpose. *Kingsley*, 576 U.S. at 398; *Bell v. Wolfish*, 441 U.S. 520, 561 (1979).

Objective reasonableness, for purposes of the *Kingsley* analysis, turns on the facts and circumstances of each particular case.  *Graham*, 490 U.S. at 396.  The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security."  *Kingsley*, 576 U.S. at 399-400.  In determining the objective reasonableness of an officer's use of force, courts consider at least the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.  *Id.* at 397.  Assessments of the reasonableness of force must be made from the perspective of a jailer who is often forced to make split-second decisions in tense situations.  *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 363 (5th Cir. 2022) (citing *Kingsley*, 576 U.S. at 399).

Here, Plaintiff's claims, as amended, taken as true, and liberally construed, do not plausibly allege objectively unreasonable force.  As an initial matter, the concept of "force" with

regard to Plaintiff's allegation is somewhat metaphysical, for there was scarcely any force used. Officer Perez simply placed the bag over Plaintiff's head while Plaintiff was vomiting, and then tightened the bag as Plaintiff continued to throw up. Plaintiff alleges no other touching by Officer Perez, other than simply holding Plaintiff in place while he vomited. Plaintiff does not appear to allege that Officer Perez used "force," let alone unconstitutional force, by merely placing the bag over Plaintiff's head. At most, Officer Perez might be construed to have used some quantum of force when he tightened the bag while Plaintiff continued to vomit. The first *Kingsley* factor is at best neutral for Plaintiff, because Officer Perez could reasonably have been expected to adjust the bag in order to catch the continuing flow of vomit.[8]

The second *Kingsley* factor weighs against Plaintiff: he suffered no injury at all. As he stated, he "just had to refresh [his] lungs with air." (Doc. No. 10, p. 7 ¶ 21.) Even a *de minimis* injury can support an excessive force claim, because "the Supreme Court has instructed courts to "'decide excessive force claims based on the nature of the force rather than the extent of the injury.'" *Brooks v. Taylor Cnty.*, No. 1:20-CV-049-H, 2021 WL 4458380, at *11 (N.D. Tex. Sept. 29, 2021) (quoting *Wilson v. Rheams*, 494 F. App'x 469, 470 (5th Cir. 2012)). But the lack of any injury nonetheless tilts the second *Kingsley* factor against Plaintiff. Likewise, the third *Kingsley* factor weighs against Plaintiff. Officer Perez tempered the amount of "force" he used by removing the bag as soon as Plaintiff stopped throwing up.

The fourth through sixth *Kingsley* factors are at best neutral for Plaintiff. Plaintiff does not appear to have presented a security threat or resisted anyone while he was vomiting. Nor does it appear from Plaintiff's factual allegations that Officer Perez perceived any threat from

---

[8] Plaintiff theorizes that Officer Perez could be ascribed an improper motive for tightening the bag because he allegedly desired that Plaintiff feel or smell his vomit. Plaintiff's theory is just that, though – a theory – and he offers only speculation, not facts, indicating that Officer Perez held any malicious intent.

Plaintiff. But on the other hand, Officer Perez applied only a miniscule amount of force – only that force needed to momentarily tighten the bag.

Taking the *Kingsley* factors together, Plaintiff fails to make factual allegations sufficient to articulate a viable excessive force claim against Officer Perez. The undersigned recommends dismissal of Plaintiff's claim against Officer Perez.[9]

### 2. *Plaintiff's claim regarding unjustified delay in surgery should be dismissed.*

Liberally construed, Plaintiff also alleges that back surgery that his doctor has stated is necessary has been unconstitutionally delayed. (Doc. No. 1, p. 3; Doc. No. 10, p. 9 ¶¶ 32(e), 32(f).) This claim should be dismissed.

Plaintiff's allegations, supplemented by his submitted medical documentation, reflect that a medical provider has indeed recommended that Plaintiff have back surgery. Plaintiff's submitted medical records include a detailed writeup from Plaintiff's visit with Dr. Alexander in December 2023, confirming that, among other things, Plaintiff had back surgery in May 2022 ("open posterior T12 to L4 laminectomy and fusion with instrumentation and L2 transpendicular decompression") and that Dr. Alexander "strongly recommend[ed] surgery to avoid permanent neurological deficits." (Doc. No. 10-2, pp. 1, 6.) Plaintiff alleges that despite this recommendation, his surgery has not occurred because jail officials are allegedly "waiting for the county to okay the surgery cause I'm on the [indigent] program." (Doc. No. 10, p. 9 ¶ 32(f).) Plaintiff's submitted grievances and responses also reflect that a "decision on [his] surgery is pending." (Doc. No. 10-3, p. 59; *see also id.* at 26, 29, 32, 58.) Liberally construed, Plaintiff's

---

[9] Plaintiff appears to sue the San Patricio County Sheriff's Department with regard to this claim as well. *See* Doc. No. 1, p. 3. Plaintiff does not make any specific allegation about the Sheriff's Department itself, as opposed to just Officer Perez. To the extent Plaintiff can be construed as claiming that the Sheriff's Department used excessive force, that claim should be dismissed.

claim is that the San Patricio County Medical Staff has violated his Fourteenth Amendment rights as a pretrial detainee by failing to provide the required surgery.  Plaintiff requests that the Court order the surgery.  (Doc. No. 10, p. 11 ¶ 44.)

The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's medical needs.  *See Ford v. Anderson Cnty., Tex.*, 90 F.4th 736, 752 n.5 (5th Cir. 2024).  A constitutional violation exists where an officer subjectively knows of a substantial risk of serious harm to the detainee and responds to that risk with deliberate indifference.  *Id.* (citing *Cope v. Cogdill*, 3 F.4th 198, 206-07 (5th Cir. 2021)).  Mere delay in receiving medical care is not, by itself, a constitutional violation.  *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  A plaintiff must show, at a minimum, deliberate indifference to his serious medical needs that results in substantial harm.  *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *Easter*, 467 F.3d at 464.

Deliberate indifference is an extremely high standard to meet.  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).  "A detainee can establish a jail official's deliberate indifference by showing that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Ford*, 90 F.4th at 752 (cleaned up).  Deliberate indifference can also be shown where a jail official knows that a detainee faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 827 (1994)).

Here, Plaintiff plausibly alleges only that surgery is needed and that it has not yet been authorized.  He fails to plausibly allege that he has suffered substantial harm by virtue of any delay in receiving back surgery (as opposed to harm he suffered at the hands of Officers

Rodriguez and Hernandez).  He also fails to plausibly allege that any responsible official has deliberately failed to authorize his surgery.[10]  Because Plaintiff's allegation regarding delay in medical care is not viable, the district court should dismiss it.

### 3.  *Plaintiff's claims against Officers Rodriguez and Hernandez in their official capacities should be dismissed based on Eleventh Amendment immunity.*

Plaintiff also sues Officers Rodriguez and Hernandez in their official capacities for the alleged excessive use of force.  (Doc. No. 10, p. 11 ¶ 41.)  Under § 1983, a suit against a state official in his official capacity is effectively a suit against the state official's office.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  "As such, it is no different from a suit against the State itself."  *Id.*  The Eleventh Amendment to the United States Constitution, however, prevents federal courts from hearing cases brought by citizens of a State against their own State, a concept known as the doctrine of state sovereign immunity.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984).  Nonetheless, the Supreme Court "carved out an exception to state sovereign immunity in *Ex parte Young*, permitting suits against state actors whose conduct violates federal law."  *Jackson v. Wright*, 82 F.4th 362, 367 (5th Cir. 2023) (quoting *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam) (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)) (describing the legal ethos that "a sovereign state cannot act unconstitutionally, and therefore, when a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit").

The *Ex parte Young* exception is a narrow one and requires a plaintiff to sue the right defendants and ask for the right type of remedy.  *See Jackson*, 82 F.4th at 367.  Under *Ex parte*

---

[10]  This case also does not present an allegation that Plaintiff's surgery is being refused, or that it is being withheld because of a blanket administrative policy.  *Cf. Thomas v. Linthicum*, No. 2:23-cv-00127, Doc. No. 18 (S.D. Tex. Jan 4, 2024) (Ramos, J.).

*Young*, the sued officer must have a "sufficient 'connection' to enforcing an allegedly unconstitutional law." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (quoting *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020)); *see also Ex parte Young*, 209 U.S. at 157.  And the plaintiff may only seek prospective injunctive relief, not monetary damages.  *Jackson*, 82 F.4th at 368.

Here, Plaintiff's does not seek any prospective injunctive relief with regard to Officers Rodriguez or Hernandez.  His claim for relief appears to be limited to monetary damages against those defendants.[11]  Accordingly, Plaintiff's claim is barred by the Eleventh Amendment and does not satisfy *Ex parte Young*'s requirements.  Plaintiff's official-capacity claim against Officers Rodriguez and Hernandez should be dismissed.

### 4.  *Plaintiff's claims against Dr. Acuna and Nurse Mary Ann in their individual capacities should be dismissed.*

Plaintiff sues two individuals who are allegedly part of the San Patricio County Medical Staff – Dr. Rene Acuna and Nurse Mary Ann – in their individual and official capacities.  He claims that these defendants made an "unauthorized diagnosis" and engaged in "medical neglect."  (Doc. No. 1, p. 3.)  In his response to the Court's questionnaire, Plaintiff clarified that by an "unauthorized diagnosis," he meant an incorrect diagnosis – not that these defendants performed an unauthorized medical examination of him.  (Doc. No. 10, p. 9 ¶ 33(a).)

---

[11]  Plaintiff's requested relief of criminal prosecution of Officers Rodriguez and Hernandez (Doc. No. 1, p. 4) does not qualify as the prospective injunctive relief contemplated by *Ex parte Young*, because that form of relief is not available in a § 1983 civil rights action.  There is no constitutional right to have someone criminally prosecuted.  *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  Numerous courts have held that the relief Plaintiff seeks is simply not available under § 1983.  *E.g.*, *Nelson v. State of Va.*, No. 7:16-CV-00055, 2016 WL 3963242, at *2 (W.D. Va. July 21, 2016) (no legal basis for court to order criminal investigation or charges against state officials); *Williams v. Davis*, No. 3:09-CV-0296-B, 2009 WL 928318, at *2 (N.D. Tex. Apr. 6, 2009) ("to the extent Plaintiff seeks to criminally prosecute someone, such relief is not available in a § 1983 civil rights action") (cleaned up); *Worthy v. Francis*, No. 3:02-CV-2102N, 2002 WL 31553847, at *2 (N.D. Tex. Nov. 14, 2002) (same); *Jones v. Conway*, No. Civ. A 9203883, 1992 WL 185578, at *1 (E.D. Pa. July 21, 1992) (same).

21 / 26

Plaintiff's allegations should be dismissed.  An incorrect diagnosis is insufficient to support a Fourteenth Amendment claim, because the deliberate indifference standard is not met. *See Lee v. Davis*, No. 6:21cv147, 2021 WL 4185881, at *4 (E.D. Tex. Aug. 9, 2021) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.")); *Domino*, 239 F.3d at 756.

Additionally, Plaintiff fails to plausibly allege that these two defendants ignored his complaints or intentionally treated him incorrectly – he merely claims that they have failed to provide him with back surgery.  (Doc. No. 10, p. 10 ¶ 34(d).)  This allegation merges into Plaintiff's claim regarding delay of the surgery, which the undersigned has recommended be dismissed.  Plaintiff's submitted documents also reflect that he was referred to a private specialist physician, in response to his sick call request, and that he received MRIs and x-rays. (Doc. No. 10-2, pp. 48, 50-51; Doc. No. 10-3, pp. 3, 10.)[12]  Moreover, Plaintiff does not plausibly allege that either Dr. Acuna or Nurse Mary Ann themselves were empowered to authorize surgery for Plaintiff.  *Cf.* Doc. No. 10-3, pp. 15 (note reflects that surgery has been recommended but that decision for surgery is pending), 18, 23-26, 29, 32, 41, 59 (same).  Rather, authorization for Plaintiff's surgery is, as he alleges, a question of cost, because he is part of the indigent treatment program.  *See* Doc. No. 10, p. 9 ¶ 32(f); Doc. No. 10-2, p. 49.  Because

---

[12]  Plaintiff claims that Dr. Acuna "didn't let the specialist have the correct copies of the MRIs so that my Dr. could see the true damage in my spine."  (Doc. No. 10, p. 9 ¶ 33(c).)  But Plaintiff's statement is clearly refuted by his own exhibits, which show that Dr. Alexander was provided with Plaintiff's MRIs and x-rays before examining him, *see* Doc. No. 10-2, p. 6, and that Dr. Alexander used that information, along with his own examination, to make the diagnosis and recommend the surgery that Plaintiff is requesting.  *See id.* at 1-6.

Plaintiff does not plausibly allege any action that either Dr. Acuna or Nurse Mary Ann have taken (or failed to take) that has prevented him from receiving back surgery, his claims against them should be dismissed.[13]

### 5. Plaintiff's claims against Sinton's chief of police should be dismissed.

Plaintiff sues the chief of the Sinton Police Department.  (Doc. No. 1, p. 3.)  That claim should be dismissed.  Plaintiff fails to allege that the police chief did anything that violated Plaintiff's rights; indeed, other than listing the police chief as a defendant, Plaintiff makes no allegation regarding the police chief at all.  "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Supervisory officials, moreover, cannot be held vicariously liable for their subordinates' actions. *See Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).  Plaintiff's § 1983 claim against the Sinton chief of police should be dismissed.

### E. Leave to amend?

The undersigned has recommended dismissal of Plaintiff's claims against Officer Perez, the Sinton chief of police, Dr. Acuna, and Nurse Mary Ann, as well as his official-capacity claims against Officers Rodriguez and Hernandez.  Plaintiff is proceeding *pro se*, and ordinarily "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2016); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).  But leave to amend is not

---

[13] Liberally construed, Plaintiff appears to be suing the San Patricio County Medical Staff on this claim as well.  *See* Doc. No. 1, p. 3.  He makes no specific factual allegation regarding the medical staff, as opposed to Dr. Acuna and Nurse Mary Ann.  It is not clear that the "San Patricio County Medical Staff" is even an entity, let alone an entity capable of being sued, and Plaintiff does not allege that the medical staff is preventing him from receiving back surgery.  To the extent that Plaintiff's claim extends to the San Patricio County Medical Staff, that claim should be dismissed.

required where amendment would be futile – that is, where an amended complaint would still fail to state a claim upon which relief may be granted. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend). In a prisoner civil rights action, "[i]f the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement).

Here, Plaintiff has been afforded the opportunity to plead his best case against the defendants: he has submitted his complaint and has responded to the Court's questionnaire with supporting exhibits. Plaintiff's factual allegations against Officer Perez, the Sinton chief of police, Dr. Acuna, and Nurse Mary Ann, the San Patricio County Sheriff's Department, and the San Patricio County Medical Staff, as well as his official-capacity claim against Officers Hernandez and Rodriguez, fail to present any plausible claim, and the undersigned doubts that, given the facts as currently understood, Plaintiff could amend his complaint to articulate plausible claims against those defendants. But this memorandum and recommendation allows Plaintiff 14 days in which to explain how he would cure the deficiencies identified above and thus demonstrate to the Court why his case should not be dismissed with prejudice and that the Court should instead grant Plaintiff leave to amend his claims. *Cf. Parham v. Wayne McCollum Detention Ctr.*, No. 3:22-cv-2790-G-BN, 2023 WL 2504910, at *6 (N.D. Tex. Jan. 10, 2023),

24 / 26

*adopted*, 2023 WL 2518853 (N.D. Tex. Mar. 14, 2023) (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16

F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when

justice so requires … but a movant must give the court at least some notice of what his or her

amendments would be and how those amendments would cure the initial complaint's defects.")).

The district court should therefore decide whether to grant leave to amend only after reviewing

any objections to this memorandum and recommendation.

### F.  Conclusion and recommendation.

The undersigned recommends that the district court:

- RETAIN Plaintiff's claims of excessive force against Officers Rodriguez and
  Hernandez in their individual capacities; and

- DISMISS all of Plaintiff's other claims.

### G.  Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each

party or counsel.  Within 14 days after being served with a copy of the Memorandum and

Recommendation, a party may file with the Clerk and serve on the United States Magistrate

Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1),

and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in

a magistrate judge's report and recommendation within 14 days after being served with a copy

shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-

to proposed factual findings and legal conclusions accepted by the district court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

      SIGNED on May 8, 2024.

MITCHEL NEUROCK
United States Magistrate Judge